IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JOSE EDILLIO SILLER,

Defendant.

CRIMINAL FILE NO.
1:18-CR-234-TWT-JKL-2

**OPINION AND ORDER**

This is a criminal action. It is before the Court on the Defendant's Motion to Suppress [Doc. 262] as well as the evidence presented during the evidentiary hearing held on the motion. The motion is denied for the reasons set forth below.

I. **Background**

The Court sets forth the facts relevant to the disposition of the Motion to Suppress based on the evidence adduced at the hearing on the motion. On May 13, 2015, the Defendant Jose Siller was driving a truck loaned to him by his nephew when Georgia State Patrol Officer Anthony Munoz initiated a traffic stop. Officer Munoz had observed the Defendant's truck sitting stopped alongside other vehicles on a slight incline at a traffic light, but none of the truck's brake lights were illuminated. In the video recorded from Officer Munoz's dash camera, all of the other vehicles stopped at the traffic light had

illuminated brake lights. (Hearing on Mot. to Suppress, Gov't's Ex. 1 at 00:35-00:44). Officer Munoz initiated a traffic stop of the Defendant's truck by pulling behind the truck and activating the State Patrol vehicle's blue lights, at which point the truck's brake lights are seen illuminated for the first time. (*Id.* at 00:58-1:04).

At the hearing, Agent David Noe, a Drug Enforcement Administration task force agent, testified that at the time of the traffic stop, Georgia State Patrol was assisting Homeland Security Investigation ("HSI") with an investigation into laundering of narcotics sales proceeds from the United States into Mexico. The HSI case agent had an informant who disclosed that he had been instructed to pick up sums of cash to be sent to Mexico. At the time he initiated the traffic stop, Officer Munoz was in contact with HSI and was aware that the Defendant was a subject of HSI's investigation. More specifically, Officer Munoz was told by HSI agents that the Defendant was expected to have a large sum of money in his truck at the time of the stop.

In the dash camera video, as Officer Munoz finishes writing the Defendant a warning for his faulty brake lights, he asks the Defendant if he is "hauling anything illegal." (*Id.* at 14:32-14:40). The Defendant responds in the negative. Officer Munoz then asks about more specific items, including "any large sums of money," and the Defendant responds, "you can check if you want to." (*Id.* at 14:40-15:17). The Defendant also responds in the negative again. As

Officer Munoz is handing the Defendant his written warning, he asks the Defendant if he can search the truck. (*Id.* at 15:25-15:30). The Defendant responds "sure," and then asks the Officer if there will be a fine for the warning. (*Id.* at 15:27-15:34). Officer Munoz repeats, "you don't mind if we search it?" (*Id.* at 15:32-15:36). The Defendant again responds "sure." (*Id.*).

The second trooper on scene, Officer Jordan Ennis, began searching the Defendant's truck after the Defendant gave verbal consent but before Officer Munoz gave the Defendant a written consent-to-search form to sign. (*Id.* at 19:36-21:52). Before giving the Defendant the consent form, Officer Munoz asked the Defendant if he read English or Spanish better, and when the Defendant responded "both," he handed the Defendant forms in both languages. (*Id.* at 21:42-21:52). Officer Munoz instructed the Defendant to read and sign the forms, adding "if you agree" as he turned to walk towards the truck. (*Id.* at 21:48-22:01). The Defendant signed the English version of the consent form without reading it. (*Id.* at 21:52-22:02). The Officers searched the truck and found a teapot containing $50,000 in banded cash inside.

## II. Discussion

In his Motion to Suppress, the Defendant raises three primary arguments. First, he argues that Officer Munoz lacked probable cause to stop him because his brake lights were not actually broken. (Mot. to Suppress ¶ 3). This argument is without merit because the relevant inquiry is not whether

3

the brake lights were in fact malfunctioning, but whether Officer Munoz had reasonable suspicion to believe they were not working at the time he initiated the stop. *See United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022); O.C.G.A. § 40-8-26 (requiring brake lights to "at all times be maintained in good working condition"). The dash camera video, along with Officer Munoz's testimony, demonstrate that the brake lights on the Defendant's truck did not illuminate until after Officer Munoz had initiated the stop.

Second, the Defendant argues that any statements he made during the traffic stop were involuntary and unconstitutional because he was not adequately mirandized, and he did not waive his Fifth and Sixth Amendment rights. (Mot. to Suppress at ¶ 8). This argument is likewise without merit. The Defendant was not arrested during the traffic stop at issue, nor was there any evidence that he was restrained by the Officers to a "degree associated with a formal arrest" such that "he [did] not feel free to leave." *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000). *Miranda* warnings are required only prior to a custodial interrogation, and the Defendant was never in custody within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *See also Howes v. Fields*, 565 U.S. 499, 509-10 (2012) ("[A] person detained as a result of a traffic stop is not in *Miranda* custody because such detention does not sufficiently impair the detained person's free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights."

4

(quotation marks and brackets omitted)).

Third, the Defendant argues that the Government violated Local Criminal Rule 16.1 by failing to timely disclose the traffic stop, the currency seizure, and the positive drug dog alert. (Mot. to Suppress at ¶¶ 10-12). The Defendant has failed to establish any prejudice, however. At the latest, the Defendant was aware of the Government's intent to use this evidence no later than December 14, 2021, and his trial is currently set for October of this year, so that he will have had nearly a year to prepare his defense by the time his trial begins.

At the hearing on the Motion to Suppress, the Defendant raised additional arguments pertaining to the duration of the stop and whether HSI's tip to Officer Munoz prior to the stop constituted pretext. These arguments rely on *Rodriguez v. United States*, 575 U.S. 348 (2015) and the Eleventh Circuit's decision in *Campbell*. The Defendant also argued that he did not affirmatively consent to the search of the truck. As to the consent issue, the dash camera video makes abundantly clear that the Defendant consented to search. The Defendant and Officer Munoz conversed without a language barrier for nearly an hour over the entire course of the stop. Then, before Officer Munoz ever asked if he could search the truck, the Defendant voluntarily stated, "you can check." (Hearing on Mot. to Suppress, Gov't's Ex. 1 at 14:40-15:17). Twice after that, Officer Munoz asked the Defendant if he could search the truck, and both

5

times the Defendant responded "sure." (*Id.* at 15:25-15:36). And even after receiving verbal consent at least twice (if not three times), Officer Munoz gave the Defendant a written consent form in two languages, which the Defendant voluntarily signed in English. (*Id.* at 21:42-22:01). There is simply no evidence that the search was not consensual, and although the Defendant is correct that Officer Ennis began searching the truck before the written consent form was signed, the search was not initiated until after the Defendant had verbally consented.

The Defendant's prolongation and pretext arguments present a closer call, but the Court finds that the Fourth Amendment was not violated. It is not disputed that Officer Munoz had knowledge from HSI that the Defendant might be carrying a large sum of cash in conjunction with a narcotic-trafficking operation. Indeed, Officer Munoz testified that "in the grand scheme of things," the Defendant's faulty brake lights were not the only reason he initiated the traffic stop. But Officer Munoz's prior knowledge or subjective intent are of no import where, as here, there is either adequate probable cause of a traffic violation or reasonable suspicion of criminal activity justifying the stop.[1] *See United States v. Harris*, 526 F.3d 1334, 1337-38 (11th Cir. 2008); *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) ("[A]n officer's motive in

---

[1] The Court notes that in more recent decisions, the Eleventh Circuit has said that traffic violations *are* criminal activity and, therefore, only reasonable suspicion is required to support a lawful traffic stop. *See, e.g.*, *Campbell*, 26 F. 4th at 880.

6

making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment[.]" (quotation marks and citation omitted)).

Finally, any prolongation of the traffic stop to investigate HSI's tip was not unconstitutional, either. In *Rodriguez*, the Supreme Court held that the tolerable duration of a traffic stop is that which is required to address the traffic violation and to address related safety concerns. *Rodriguez*, 575 U.S. at 354 ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."). But the Supreme Court also stated that "the Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Id.* Applying *Rodriguez*, the Eleventh Circuit later held in *Campbell* that "a stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes." *Campbell*, 26 F.4th at 884. Then, in no uncertain terms, the Eleventh Circuit explained that "to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Id.*

In this case, the first two *Campbell* factors are met. Certainly, Officer Munoz's questioning as to whether the Defendant might be hauling anything illegal was unrelated to the stop's initial purpose of investigating faulty brake

7

lights. And this questioning (and the resulting search) began just as Officer Munoz was finishing up writing a warning for the brake lights. But as to the third factor, the Court finds that HSI's tip to Officer Munoz provided the requisite reasonable suspicion to permit him to investigate the tip without unlawfully prolonging the stop.

In the traffic stop context, whether reasonable suspicion justifies the stop "is dependent upon both the content of information possessed by police and its degree of reliability. . . it takes into account the totality of the circumstances—the whole picture." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quotation marks and citation omitted). And even anonymous tips "can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop." *Id.* (brackets and quotation marks omitted). The Court is hard-pressed to imagine a more reliable tip than one given by an HSI agent based on a confidential informant's observations, especially juxtaposed with the anonymous tips from civilians contemplated in *Navarette*. *See id.* at 397-98. Accordingly, the stop was not unlawfully prolonged, and the Officers possessed the reasonable suspicion necessary to question the Defendant about potential criminal activity unrelated to the initial traffic stop.

### III.   Conclusion

For the reasons set forth above, the Defendant's Motion to Suppress [Doc. 262] is DENIED.

SO ORDERED, this  9th  day of September, 2022.

                                        THOMAS W. THRASH, JR.
                                        United States District Judge